(No. 15883.—Decree affirmed.)

EDMUND MICHAEL DUNNE, Catholic Bishop of Peoria, Appellant, *vs.* EMMA QUIRK MINSOR *et al.* Appellees.

*Opinion filed April 14, 1924—Rehearing denied June 6, 1924.*

1. WILLS—*difference between a condition subsequent and a condition precedent.* If the act or event required to be done by the terms of the instrument may follow or accompany the vesting of the estate it is a condition subsequent, but if the event is to happen before the estate is to vest it is a condition precedent.

2. SAME—*condition subsequent gives heirs right of re-entry on breach of condition.* A condition subsequent in a deed or will, either by express words or necessary implication, gives the grantor or the heirs of the grantor or testator the right to re-enter and repossess the premises upon violation of the condition.

3. SAME—*no particular words are necessary to create condition subsequent.* No particular form of words is essential to create a condition subsequent, but it is essential that the intention be shown clearly by the words used.

4. SAME—*covenants are favored over conditions subsequent.* The law favors the vesting of estates rather than their destruction, and where the meaning is doubtful as to whether a·clause creates a condition subsequent or a covenant it will be construed as a covenant, but where the intention to create a condition subsequent is clear and the restrictions are not opposed to a settled rule of law or public policy the courts will give effect to the condition.

5. SAME—*a re-entry clause is not indispensable to a condition subsequent.* A condition subsequent, if clearly intended, may be created on the transfer of a fee without providing for re-entry.

6. SAME—*re-entry clause is important in determining condition subsequent.* In determining whether a clause creates a condition subsequent or a covenant, the presence or the absence of a re-entry clause or a clause providing for forfeiture of the estate for breach of the condition is important to be considered.

7. SAME—*general rule as to when covenant is created.* Where a conveyance by deed or will is made upon condition that the grantee or devisee shall do a specified completed act, such as to pay a specified sum of money or pay the debts of the grantor or testator, such clause will be held to create a covenant rather than a condition subsequent.

8. SAME—*what does not necessarily show creation of condition subsequent.* The fact that the conveyance states the purpose for which it is made or defines the use to which it is to be applied is not ordinarily regarded as creating a condition subsequent subjecting the estate to defeasance in case of breach of such condition.

9. SAME—*when devises are made upon condition subsequent.* A devise in each of the wills of a brother and sister giving their homestead to a church corporation, "upon the condition, however, that the officers of said church shall at all times see that" certain graves, including those of the testator and testatrix, are cared for, is upon condition subsequent although no provision for re-entry is expressed, as the evident intention of the donors was to secure the performance of the condition, which could not well be enforced after their death were it construed to be a covenant.

APPEAL from the Circuit Court of Henry county; the Hon. CHARLES J. SEARLE, Judge, presiding.

THOMAS J. WELCH, for appellant.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, as bishop of the Catholic church of the diocese of Peoria, filed a bill in the circuit court of Henry county to construe the wills of James Quirk and Mary Quirk, deceased. The question involved in this case is whether these wills create a condition subsequent or a cove-

nant. Of the will of James Quirk clause 16 is the one involved, and is as follows:

"*Sixteenth*—I give and devise my homestead where I now reside, in Kewanee, Illinois, at the intersection of South and Chestnut streets, on lots ten (10) and eleven (11) and a portion of lot twelve (12), in block eleven (11), of Tenney's addition to the town (now city) of Kewanee, in Henry county, Illinois, to the Bishop of Peoria, Illinois, for the use of the Church of the Visitation of Kewanee, Illinois, as a residence for the resident priest of said church, subject, however, to the life use heretofore given to my sister, Mary Quirk, and the rights given to my said cousin, James Quirk, and upon the further condition that the resident priest or the officers of said church shall at all times see that the graves of myself and my said sister, Mary Quirk, and my brother, Peter Quirk, in the Catholic cemetery in Kewanee, Illinois, are cared for and kept in order."

Clause 2 of the will of Mary Quirk is as follows:

"*Second*—I give and devise my undivided interest in the homestead in which I now reside, in Kewanee, Illinois, situated on lots ten (10) and eleven (11) in block eleven (11) of Tenney's addition to the town (now city) of Kewanee, aforesaid, to the Bishop of Peoria, Illinois, in trust for the use of the Church of the Visitation of Kewanee, aforesaid, as a residence for the officiating priest of said church, upon the condition, however, that the officers of said church shall at all times see that the graves of my brothers, James and Peter Quirk, and my grave, in the Catholic cemetery in Kewanee, aforesaid, are cared for and kept in order."

James Quirk departed this life in Kewanee on November 13, 1906. Mary Quirk died at the same place on August 5, 1907. The wills were duly admitted to probate in the county court of Henry county. James and Mary Quirk were brother and sister. Neither was ever married, and left surviving them neither father, mother, brothers, sisters, nor

any descendants of a brother or sister. Such of the relatives of the deceased as were known were made parties defendant to the bill, and all were defaulted with the exception of Mary Ellen Quirk, John J. Quirk and Frank Quirk, who filed joint and several answers. Mary Ellen Quirk is a daughter of John Quirk, deceased, who was a cousin of James Quirk, the testator, and who was named as legatee of the sum of $1000 by the eighth clause of his will. Frank Quirk and John J. Quirk are sons of Mary Ellen Quirk and are the grandsons of John Quirk, deceased.

The bill sets out that appellant by reason of said wills is the owner in fee of the described property; that since the death of James and Mary Quirk the premises have been occupied as a rectory by the different resident priests of the Church of the Visitation of Kewanee; that upon this property there is located a large three-story frame building; that the Church of the Visitation, and the parochial school in connection therewith, are located one and one-half blocks from the property; that the building on the property is not adapted to or satisfactory for rectory purposes; that it is in need of repairs, and that in the Catholic church it is expected that the priest will live next to the church. The bill also sets out that the property can be sold for the sum of $12,000, and the proof shows that appellant has an opportunity to sell this property to the trustees of the Methodist church of Kewanee, who desire to build a church thereon, and appellant desires from the proceeds of this sale to build a new rectory for the Church of the Visitation. The answer alleges that under clause 16 of the will of James Quirk and clause 2 of the will of Mary Quirk conditions subsequent are created, and that the conditions have been broken because of the neglect of appellant to properly care for and keep in order the graves of the testators and of Peter Quirk, and that the condition subsequent will be broken upon the church ceasing to use the property in question as a rectory.

It appears from the evidence that for several years after the death of the testators their graves were not cared for and kept in order in accordance with the terms of the wills but that since 1917 they have been and are now properly cared for.

The chancellor held that under the two wills appellant became seized of the fee of the property in trust for the use of the Church of the Visitation of Kewanee as a residence for the resident priest of said church; that the clause appearing in each will, "as a residence for the resident priest of said church," does not constitute a condition subsequent but merely indicates the object which the testators had in mind in making the bequest; that the provisions in the wills that the priest or officers of the church should at all times see that the graves of James, Mary and Peter Quirk were cared for and kept in order constitute a condition subsequent, a breach of which would cause a forfeiture and reverter to the heirs-at-law of James and Mary Quirk. The decree also finds that while in times past the graves had not been properly cared for, yet since the year 1917 proper care has been given them, and that the condition is being complied with and now remains unbroken. The decree provided that the title to the premises be confirmed and quieted in appellant and that he be decreed the owner thereof in fee simple, "free and clear of all incumbrances whatsoever, excepting that the said title of the complainant is subject to the condition that the resident priest or officers of said Visitation church shall at all times see that the graves of James Quirk, Mary Quirk and Peter Quirk are cared for and kept in order."

Appellant appeals from that part of the decree holding that the language of the wills providing for the care of the graves constitutes a condition subsequent. The contention of appellant in this regard is that this language creates a covenant and not a condition. Appellees have filed no

briefs, and we have therefore given the question independent investigation.

As no cross-errors are assigned on the holding of the chancellor that the language in the wills, "for the use of the Church of the Visitation of Kewanee, Illinois, as a residence for the resident priest of said church," does not establish a condition subsequent but merely indicates the object of the testators in making the devise, that question will receive no further consideration here.

In support of the contention that the provisions of the will as to caring for the graves of Mary, James and Peter Quirk is a covenant and not a condition subsequent, the argument is that the words "on condition," without a re-entry clause, do not establish a condition subsequent; that courts favor the construction of such language as a covenant rather than as a condition subsequent, and that there being here no language providing for re-entry, the words referred to do not clearly create a condition subsequent and should be construed as a covenant.

The rule is that if the act or the event required to be done by the terms of the instrument may follow or accompany the vesting of the estate it is a condition subsequent. (*Nowak* v. *Dombrowski,* 267 Ill. 103; *Finlay* v. *King,* 3 Pet. 346; *Shinn* v. *Roberts,* 20 N. J. 435; Tiedeman on Real Prop.—3d ed.—sec. 202; 1 Tiffany on Real Prop.—2d ed.—274.) The test is whether the thing is to happen before or after the estate is to vest. If the former, it is a condition precedent; if the latter, a condition subsequent. A condition subsequent in a deed gives the grantor, either by express words or necessary implication, the right to re-enter and re-possess the premises upon violation of the condition and affects an estate already granted. It is not always easy to determine whether a provision in a deed or will is such a condition as confers on the grantor or the testator, or his heirs, the right of entry on breach thereof, or whether the provision is a covenant, restriction or limi-

tation. (Preston's Sheppard's Touchstone, 121.) No particular form of words is essential to create such a condition, but it is essential that the intention be shown clearly by the words used. If the meaning is doubtful as to whether the clause is a condition or covenant it will be construed as a covenant, and this for the reason that the law favors the vesting of estates rather than their destruction, and conditions are not, therefore, favored. (*Williams* v. *Vanderbilt,* 145 Ill. 238; *Koch* v. *Streuter,* 232 id. 594; *Board of Education* v. *Trustees,* 63 id. 204.) A re-entry and forfeiture clause is always considered important in determining the intention of the testator, although it is not indispensable. (*Druecker* v. *McLaughlin,* 235 Ill. 367; *Koch* v. *Streuter, supra; Nowak* v. *Dombrowski, supra.*) A condition subsequent could at common law be created on the transfer of a fee simple without stipulation as to re-entry. Coke's Litt. 202A; *Freeman* v. *Bateman,* 2 B. & A. 168; *VanRenselaer* v. *Ball,* 19 N. Y. 100.

In determining whether a clause is a condition subsequent or a covenant, the presence or the absence of a re-entry clause giving that right to the grantor or his heirs, or of a forfeiture of the estate for breach of the condition, has always been considered important. (*Koch* v. *Streuter, supra; Post* v. *Weil,* 115 N. Y. 361.) However, it is universally recognized that the intention of the testator is to govern. The usual rule is, that where a conveyance is made upon condition that the grantee shall do a specified completed act, such as pay a specified sum of money or pay the debts of the grantor, such clause creates a covenant rather than a condition subsequent. The fact that the conveyance states the purpose for which it is made or defines the use to which it is to be applied is not ordinarily regarded as creating a condition subsequent subjecting the estate to defeasance in case of breach of such condition. *Ruch* v. *Rock Island,* 97 U. S. 693; *Warner* v. *Bennett,* 31 Conn. 468; *Hooper* v. *Cummings,* 45 Me. 359; *Faith* v. *Bowles,* 86 Md.

13; *Rice* v. *Boston and W. Railroad Corp.* 12 Allen, 141; *Nicoll* v. *New York and Erie Railroad Co.* 12 N. Y. 121.

While conditions subsequent are not favored in the law and courts incline against them in case of doubt, yet if the intention to create such an estate is clear and the restrictions are not opposed to a settled rule of law or public policy, courts will give effect to them. *Latham* v. *Illinois Central Railroad Co.* 253 Ill. 93; *Lyman* v. *Suburban Railroad Co.* 190 id. 320; *Star Brewery Co.* v. *Primas,* 163 id. 652; *Eckhart* v. *Irons,* 128 id. 568; *Horner* v. *Chicago, Milwaukee and St. Paul Railway Co.* 38 Wis. 165; *Stanley* v. *Colt,* 5 Wall. 119; *Birmingham* v. *Lesan,* 77 Me. 494; *Hapgood* v. *Houghton,* 22 Pick. 480; *Watters* v. *Bredin,* 70 Pa. St. 235.

At common law the right to take advantage of a breach of a condition subsequent by enforcing a forfeiture, or the right of re-entry, so called, belonged exclusively to the grantor, and after his death to his heirs. The heir of the grantor is entitled to avail himself of the benefit of that right though not expressly named in a reservation thereof. That rule of common law is applicable in this State. (*Boone* v. *Clark,* 129 Ill. 466.) In the case of a will it is obvious that only the heirs of the testator can take advantage of the breach of a condition subsequent in a will.

Counsel has cited numerous cases in support of appellant's contention that the language here involved is a covenant rather than a condition. These cases, however, recognize and follow the rule herein referred to. In *Rooks Creek Church* v. *First Lutheran Church,* 290 Ill. 133, it was held that the words there used created a condition subsequent rather than a covenant. The opinion cites the fact that an action on covenant in that case would not afford an adequate remedy. It was also there held that words of re-entry or forfeiture are not necessary to the creation of a condition subsequent. Appellant also cites *Koch* v. *Streuter, supra.* In that case, while recognizing the rule to be as herein

stated, it was held that under the language of the deed there under consideration a condition subsequent was not created. In the opinion in that case it is said that the absence of words of re-entry is important in determining the intention of the grantors. In *Northwestern University* v. *Wesley Hospital,* 290 Ill. 205, also cited by appellant, there was a condition of forfeiture expressed in the deed, and the language of the deed was held to be a condition subsequent. In *Sanitary District* v. *Chicago Title and Trust Co.* 278 Ill. 529, it was said that in cases of doubt, language in a deed will be construed to be a covenant rather than a condition, but it was held the language there used created a condition subsequent. The same rule is laid down in *McElvain* v. *Dorris,* 298 Ill. 377, where the condition of the deed was that the tract of land conveyed should be used for mill purposes, and if not used for such purposes the title to revert to the former owner. While recognizing the rule that the language used must be free from doubt, it was there held that the deed imposed a condition subsequent, and that the erection of a building that could be but was not used as a mill was not a compliance with the condition. A devise of land to a town for a school provided a school house was built on a certain part of the land was held to be a condition subsequent. (*Hayden* v. *Inhabitants of Stoughton,* 5 Pick. 528.) In *Hooper* v. *Cummings, supra,* the language in a conveyance requiring that "the grantees fence the land and keep it in repair" was held to be a condition subsequent.

We are of the opinion that there is no ambiguity in the language of these wills. The testators expected to receive as the benefit of their conveyance the perpetual care of their graves and that of Peter Quirk. There was no other consideration or reason for the transfer of the property expressed in the wills, and it seems evident that it was made with the expectation that the acceptance of the devise would constitute an assurance that the one condition thereof would be met and that their graves would be perpetually cared for.

The consideration was not one that can be met by a single, definite act, as is usual in the case of a covenant, but the service to be rendered is a continuing one and follows the vesting of the title. The devise was accepted upon the condition named in the will, and with the exception of some years immediately following the death of the testators their graves have been and at present are being kept up in accordance with the terms of the wills. While there was no right of re-entry reserved to the heirs-at-law of the testators by the express language of the wills, it seems clear that it was the intention of the testators that that right should be reserved to them.

It is argued that to construe this as a covenant would give the right to enforce that covenant in equity. Without going into the question as to whether or not the heirs-at-law of the testators could establish grounds for compelling specific performance of such a covenant, it is not at all likely that any of them would attempt to do so. It might well have been within the minds of the testators or their adviser that a provision in the wills for the care of the graves as a condition to the enjoyment of the property would more readily insure the purpose desired. Nor would an action at law for the breach of the covenant, if it were such, afford an adequate remedy. It would be difficult for the heirs, who alone would be entitled to bring such action, to show damage to themselves or to any interest in the property conveyed.

We are of the opinion that the language in the wills in this case created a condition subsequent and that the chancellor did not err in so holding. The decree will therefore be affirmed.

*Decree affirmed.*