**CALUMET COUNCIL BUILDING CORPORATION v. STANDARD OIL CO. OF INDIANA.**

No. 9346.

Circuit Court of Appeals, Seventh Circuit.

April 16, 1948.

Weymouth Kirkland, Howard Ellis, A. L. Hodson, Buell F. Jones, Merwin Bristol, and Alden T. White, all of Chicago, Ill., for appellant.

William J. McGah and Elmer J. Whitty, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellee brought suit to remove two restrictions contained in a deed. The court held both restrictions void and decreed that they be removed as clouds on the title of appellee to the real estate conveyed by the deed wherein they were contained. Appellant, the grantor of the deed, appeals.

The facts were stipulated. Plaintiff, the Calumet Council Building Corporation, was organized in April, 1924, by Calumet Council, a fraternal organization, for the purpose of building a clubhouse. Defendant is an Indiana corporation licensed to do business in Illinois. In 1922, it owned real estate located at the southwest corner of Marquette Road and Stony Island Avenue in the city of Chicago, operating thereon a service ·station. In July of that year it purchased the northwest corner lot for the purpose of expanding its business, intending then to build and operate another service station on the property directly across the street from the one it then owned and operated. It paid $60,000 for this ·northwest corner lot, the property involved in this controversy. It did not immediately proceed with its plans, and thereafter it received various offers to purchase the property, including a firm offer of $100,000 in July, 1923, which it rejected because of its plan to use it as originally intended, for another service station. In February 1924, a representative of Calumet Council asked Standard to sell the northwest corner to it for the erection of a clubhouse.

Standard agreed to sell its lot, believing that the location of the clubhouse directly across from its service station would increase the business of the station. Figuring the cost of the lot, including purchase price, taxes, and other items, at $80,000, it agreed to sell for that amount, and the parties agreed that the deed should contain two restrictions, the first, in effect, to prevent the use of the lot at any time for any business in competition with Standard's service station on the southwest corner, and the second, not to dispose of the lot until the clubhouse had been erected thereon. The sale was executed accordingly, and in March 1924, Standard conveyed the lot by warranty deed to three representatives of the Council who thereafter conveyed to plaintiff. The deed from Standard contained the following conditions, now sought to be declared invalid and removed as clouds on title:

"This ·conveyance is made upon the express condition and agreement that no part of the real estate herein conveyed shall be used by the grantees * * * for the purpose of conducting * * * the business of selling, handling or dealing in gasoline, * * * lubricating oils, or any fuel to be used for internal combustion engines, or lubricants in any form; and if said real estate is hereafter used for any of said purposes, then * * * the title to said real estate, together with all buildings * * *, shall revert to the grantor herein and it shall be unlawful for the grantor, its successors and assigns, to re-enter ·* ·* *.

"It is expressly understood and agreed that the above described real estate will be used by the Knights of Columbus, and it is made a condition of this deed that the grantees, * * * will not sell, lease, or otherwise dispose of said real estate (except to said Knights of Columbus) until a Clubhouse has been erected * * * by said Knights * * * on said real estate,

and upon breach of the above condition, the title to said real estate, together with all the buildings * * *, shall revert to the grantor herein, and it shall be lawful for the grantor, * * * to reenter * * *"

In October, 1927, the Council abandoned its building plans and asked permission to sell the lot without the requirement to build a clubhouse, and in 1928, Standard agreed that it might do so, but it had not, prior to the bringing of this suit, executed or delivered any document releasing such restriction. Standard rejected the Council's offer to sell the lot back to it and has refused all requests to release the first restriction.

The court held that the second restriction in the deed constituted such a restraint on alienation as to render it totally void, and that this void restriction invalidated both restrictions no matter what might be said of the first condition standing alone. It held further, however, that the first condition was independently void for the reason that Standard, a foreign corporation, had no power to hold a naked possibility of reverter which, it held, could not be necessary to the business of any corporation. The court stated that he and counsel had been able to find only four cases in the entire United States where a possibility of reverter had been enforced in favor of a corporation, and that in each of those cases the restrictions were in the public interest.

With respect to the first ground for the court's decision, that the second restriction was so wholly invalid as to render both restrictions invalid, we find no basis in Illinois law for such a ruling. They were created by separate clauses of the conveyance and appear to us to be clearly separable. Such was the case in Dodd v. Rotterman, 330 Ill. 362, 161 N.E. 756, where the court held an agreement not to transfer certain property to any other person an illegal restraint which did not, however, vitiate a covenant to reconvey on demand of the grantor.

We deem it unnecessary to decide the validity or the invalidity of the second condition in view of the fact that appellant has consented to release it at any time and has in fact attempted to release it, by instrument executed and sent to appellee after this suit was started. Appellee contends and the court held that such release is ineffective for the reason that it contains no words of conveyance and was not accepted by appellee. We do not understand that such formal conveyance is essential to the extinguishment of the condition or of the right of reentry for breach of it. The Illinois court in Powell v. Powell, 335 Ill. 533, 167 N.E. 802, held that non-compliance with the condition subsequent does not of itself determine the estate since the right to enforce a forfeiture may be waived, and the same court, in Sanitary District v. Chicago Title & Trust Co., 278 Ill. 529, 116 N. E. 161, held that a grantor may waive a forfeiture and, by its acts, estop itself from insisting upon a forfeiture. Since the record clearly shows that appellant does not intend to enforce a forfeiture for breach of the second condition, and has by its acts estopped itself from enforcing it, has tendered a formal release of it, and offered to execute another instrument sufficient to release it, we deem it unnecessary to consider the validity of the second condition.

The basis for the ruling of invalidity of the first restriction was ultra vires. On argument appellee conceded that it would be valid if made by an individual, or if executed under the later, 1933, Illinois statute on Corporations. Smith-Hurd Stats. c. 32, § 157.1 et seq. It asserts, however, that two provisions of the Act of 1919, Callaghan's Illinois Statutes Annotated (1924 Ed.) Chap. 32, Smith-Hurd Ill.Rev.Stats. 1925, c. 32, in effect at the time of the execution of the conveyance, render the condition invalid. The first, contained in section 6 of the Act, on Powers, permits a corporation to acquire, own, possess and enjoy so much real property as may be necessary for the transaction of the business of such corporation, and to lease, mortgage, pledge, sell, convey or transfer the same. Section 84, relating to Foreign Corporations, provides that those admitted to do business in the State shall enjoy the same, but no greater privileges than domestic coporations, and section 88, like section 6, permits the holding of only such real estate as is necessary for carrying on its legitimate business. The District Court held that when Stand-

ard sold the lot it thereby admitted that it was unnecessary to the transaction of its business, and that a naked possibility of reverter was a peculiar species of property which was not such an interest in real estate as could ever be necessary to the business of any corporation.

We think there can be little question of the legality of the original purchase of the lot by Standard in 1922. The parties agreed by their stipulation of facts that it was for the purpose of erecting and operating another service station, and this was not denied, except by the inference of the District Court from the fact of the subsequent sale. However, the Illinois courts have recognized the right of corporations to determine what amount of land they need. See Bell v. Mattoon Waterworks & Reservoir Co., 245 Ill. 544, 92 N.E. 352, 137 Am.St. Rep. 338, 19 Ann.Cas. 153. If, after purchase of the property for a permissible purpose, Standard changed its mind about using it for that purpose, it was entitled to dispose of it. And we find no such legal obstacle in the way of its protection of contiguous property belonging to it as impelled the District Court to invalidate the mode adopted. That court states that it found only four cases in the entire United States where a possibility of reverter had been enforced in favor of a corporation, and in each of those cases, the restriction was in the public interest.[1] We may say conversely, however, that we find no case where reverter was denied to a corporation. An early case, Schulenberg v. Harriman, 88 U.S. 44, 21 Wall. 44, 22 L.Ed. 551, seems to us to recognize the right of a corporation to hold such an interest, stating, "And it is settled law that no one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs, *or the successors of the grantor if the grant proceed from an artificial person; * * ** (Our Ital.)

Appellee asserts that "courts do not favor restrictions upon the use of property and will not lend their aid to enforce forfeitures." That is scarcely a fair state-

ment of the oft reiterated rule that a court of equity will not lend its aid to enforce a forfeiture because of a breach of a condition subsequent in a deed. See Powell v. Powell, supra. In Sanitary District v. Chicago Title & Trust Co., supra, [278 Ill. 529, 116 N.E. 165] it is expressly stated that "* * * When actions of ejectment have been brought to enforce the forfeiture upon breach of such condition they have invariably been sustained. * * * (Citing numerous cases.)" It is true that conditions subsequent must be created by express terms and are to be strictly construed, especially when they are relied upon to work a forfeiture. Dodd v. Rotterdam, supra. However, "if the intention * * * is clear and the restrictions are not opposed to a settled rule of law or public policy, courts will give effect to them." Dunne v. Minsor, 312 Ill. 333, 340, 143 N.E. 842, 844; Powell v. Powell, supra.

[7] In the case at bar we cannot say that the first restriction is opposed to any settled rule of law or public policy. It is neither severe nor extensive, being limited only, in effect, to use for a business in competition with appellant's business operated on the opposite corner. The Illinois Supreme Court has enforced restrictions on the establishment of a certain, specified business, by covenant (Frye v. Partridge, 82 Ill. 267—competing ferry service; Natural Products Co. v. Dolese & Shepard Co., 309 Ill. 230, 140 N.E. 840—stone quarry); or by condition subsequent (Wakefield v. Van Tassell, 202 Ill. 41, 66 N.E. 830, 65 L.R.A. 511, 95 Am.St.Rep. 207 — grain elevator). And certainly when it is admitted that the restriction would be valid under the Corporation Act of 1933, it cannot be said to be opposed to the public policy of the state of Illinois.

A further indication of the absence of a public policy opposed to the restriction is the fact that an Act of July 21, 1947, specifically recognizes the possibility of reverter and right of reentry in corporations. Section 3 of this Act provides that when a corporation is dissolved or ceases to exist,

---

[1] Cowell v. Colorado Springs Co., 100 U.S. 55, 25 L.Ed. 547; Whealkate Mining Co. v. Mulari, 152 Mich. 607, 116 N.W. 360, 18 L.R.A.,N.S., 147; Union Colony Co. v. Gallie, 104 Colo. 46, 88 P.2d 120; Edwards v. West Woodbridge Co., 60 App.D.C. 362, 55 F.2d 524.

any possibility of reverter and any right of reentry for breach of condition subsequent reserved by or to the corporation and affecting land in the state of Illinois ceases and determines, and section 4 of the Act limits the period of both to fifty years where the condition has not been broken. Smith-Hurd Illinois Annotated Statutes, Chap. 30, Conveyances, sections 37d and 37e. This, of course, has no bearing on the validity of a conveyance made in 1924 except that, to repeat, it does indicate the absence of any policy opposed to the corporate right to hold such interests.

There is a further objection to this assertion of ultra vires as a basis for affirmative relief, to defeat the condition. It is generally held that a corporation's right to acquire and hold land, whether it be ultra vires or in violation of its charter, laws or public policy of the state, can be affirmatively challenged only by the state in which the land lies. 6 Fletcher on Corporations (Perm.Ed.), sections 2819, 2820; Bartee Tie Co. v. Jackson, 281 Ill. 452, 117 N.E. 1007; Cooney v. A. Booth Packing Co., 169 Ill. 370, 48 N.E. 406. We assume that this rule extends to any interest in land. As stated in Fletcher, op. cit., section 2489, "It must be kept in mind that a corporation may undertake many things in the enforcement of its rights and the conservation of its property previously acquired, which it could not engage in as a primary business." Cf. Wolff v. Albert Schwill & Co., 351 Ill. 28, 183 N.E. 567.

The District Court cited the case, Chicago & A. R. Co. v. Keegan, 185 Ill. 70, 56 N.E. 1088, 1090, as authority for the proposition that, "In Illinois a domestic corporation can own only such an interest in real estate as is necessary for the carrying out of its corporate purposes." Appellee cites this same case to support its statement that the Illinois Supreme Court "has many times passed on the right of a corporation to hold real estate where such question arose in a collateral proceeding." However, a careful reading of that case indicates that the Illinois Court there reversed a decision of a lower court which had found the individual defendants "not guilty" in an action in ejectment brought by a railroad. The Court held that the railroad had established its title and was entitled to recover in spite of the argument that the railroad was not entitled under its charter to acquire the land described, saying, "A corporation has power to acquire and hold such real estate as is necessary for the purposes of its business, and the State alone can question the right of a corporation to own real estate. In Cooney v. [Booth] Packing Co., 169 Ill. 370, 48 N.E. 406, we held 'that if a corporation has power to take and hold real estate for any purpose, when the deed to it is executed the title passes to it, and whether the corporation exceeded its powers in accepting the conveyance was a question which could only be raised by the State.'"

And, finally, it must be remembered that the court was not here being asked to *enforce* the right of reentry for breach of a condition subsequent, but instead, was asked to *extinguish* it. We find no authority in Illinois statutes or cases for the relief prayed.

The judgment of the District Court is reversed, and the cause remanded.