(No. 11740.—Judgment affirmed.)

THE BARTEE TIE COMPANY, Appellant, *vs.* WILLIAM
J. JACKSON, Appellee.

*Opinion filed December 19, 1917.*

1. CARRIERS—*when provision for exemption from liability does
not render lease of railroad property void as against public policy.*
Common carriers cannot exempt themselves from all responsibility
for loss arising from the negligence of themselves or their servants,
but a provision in a lease of railroad property for the purpose of
storing ties thereon that the railroad company shall not be liable
for any loss by fire on the leased property caused by the operation
of the adjacent railroad is not void as against public policy, as such
use of the property is not a public use.

2. PUBLIC UTILITIES—*public use requires that all persons have
an equal right to the use.* Public use requires that all persons must
have an equal right to the use upon the same terms, however few
the number who avail themselves of it, and that it shall be open to
all people to the extent that its capacity for such use may admit.

3. SAME—*what use of land by railroad company does not make
it a public utility.* The fact that a railroad company owning a large
tract of land near the terminus of one of its branches leases small
parcels to persons who may desire to store railroad ties thereon
does not make such land a freight yard depot nor the company a
public utility as respects such use. (*Checkley* v. *Illinois Central
Railroad Co.* 257 Ill. 491, followed.)

4. CORPORATIONS—*question whether a corporation holding real
property has acquired it for authorized use must be raised by the
State.* Where a corporation may for some purposes acquire and
hold title to real estate, the question whether or not the real estate
has been acquired for the authorized use cannot be raised by any
party except the State.

APPEAL from the Appellate Court for the Fourth Dis-
trict;—heard in that court on appeal from the Circuit Court
of Massac county; the Hon. B. W. POPE, Judge, presiding.

COURTNEY, HELM & HELM, (J. D. MOCQUOT, of coun-
sel,) for appellant.

C. L. V. MULKEY, and W. R. HUNTER, (HOMER T.
DICK, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Appellant, the Bartee Tie Company, brought an action against appellee, William J. Jackson, receiver of the Chicago and Eastern Illinois Railroad Company, in the circuit court of Massac county, to recover damages for the loss of certain railroad cross-ties stored on land leased from said receiver by the appellant. The declaration contained three counts. To the first and third counts appellee filed a plea of the general issue, with a stipulation that all defenses available to him might be proved under that issue. The trial court sustained appellee's demurrer to the second count, and appellant electing to stand by said count, judgment was entered against it on that count. At the conclusion of all the evidence offered on the trial of the case on the first and third counts, appellee moved the court to direct a verdict for appellee on those two counts. This motion was allowed and judgment was entered against appellant. The Appellate Court for the Fourth District affirmed this judgment on appeal and granted a certificate of importance. The appeal to this court followed.

The cross-ties were stored by appellant at Joppa, Illinois, on a parcel of land belonging to said railroad company. Joppa is situated in Massac county, on the Ohio river, about twenty miles below and across the river from Paducah, Kentucky, and is the southern terminus of appellee's branch railroad known as the Joppa branch, connecting with its main line about eighteen miles northwest of Joppa, at Joppa Junction. Along the Cumberland and Tennessee rivers the evidence shows a great deal of timber is owned and controlled by various tie companies, whose business is to furnish cross-ties to railroad companies in this country; that at certain seasons of the year this timber is cut up into ties, loaded on barges and towed by steamers owned by towing companies and hired by said tie companies down these two rivers into the Ohio river and to convenient points

on said river where railroad connections exist. The evidence tends to show that the ties are stored at some place for future shipment or directly forwarded by rail to some further destination, as the tie companies owning said ties may decide. The evidence further tends to show that appellee's railroad company was a competitor for this traffic, and that its Joppa branch was built partially, if not wholly, with a view to handling the traffic in these ties, and that said railroad company provided at Joppa special facilities not only for transporting these ties to other points in the country, but also for storage thereof by such of said tie companies as might desire to hold their ties for future delivery; that said railroad company has constructed and maintains at Joppa one or more incline tracks, which extend diagonally down the river bank from the main tracks of its Joppa branch to the water's edge; that if the tie companies desire to ship their ties immediately to another destination they are unloaded from the barges by the tie companies' employees onto the cars of appellee's company and these cars are taken to such points as specified by the shippers. At this point appellee's company owns several hundred acres of land,—the declaration says about 300, but counsel for appellant now insist there is evidence showing about 600 acres. On this land there are several switch or spur-tracks used for hauling in and unloading property for the purpose of storing it upon said land until the owners desire to sell and ship. In 1914 appellant entered into a lease for about four acres of this land with appellee's company from May 1, 1914, to May 5, 1915, unless sooner terminated. Appellant apparently had occupied this land for some time under a former lease. A spur-track was built from the main tracks to Joppa onto this four acres, and several other spur-tracks were also constructed and maintained for other portions of said land owned by appellee's company. The ties in dispute, destroyed by fire on April 6, 1915, were shipped down the Tennessee and Cum-

berland rivers by appellant, and it made arrangements with towing companies on said rivers for carrying these ties to Joppa, although it appears that some barges loaded with these ties were towed from Paducah, on the Ohio river, to Joppa by boats owned by appellee's company. This work by appellee's company in towing from Paducah to Joppa was under a contract between the towing companies and appellee's company, and, so far as said towing was concerned, appellant made all the arrangements with said towing companies. When these barges with ties reached Joppa the barges were moored at the foot of appellee's inclined railroad. Here they were delivered by the towing companies to appellant, and the ties were counted and all towing charges for the transportation to Joppa paid to the towing companies. These ties were then transferred from said barges by the employees of appellant and loaded onto the cars of appellee's company without any expense to the latter company. When they were so loaded the cars were switched, without charges to appellant, by appellee's company to spur-track No. 3, extending onto the four acres in question. When these cars, with the ties loaded thereon, reached the desired location on said spur-track they were turned over to appellant and the ties unloaded from the cars by employees of appellant and piled up in said yard, there to remain in the possession and control of appellant until it was ready to make disposition of them. Some of these ties were brought to Joppa and stored in said yard in the manner indicated during the latter part of 1913 and the remainder during 1914, no ties of appellant being either stored on or shipped from said parcel of ground leased by appellant after January 1, 1915. On April 6, 1915, appellant had about 156,000 of said cross-ties stored on said leased four acres. Early in the afternoon of that day one of appellee's locomotives backed in on a spur-track closely adjacent to the spur-track extending onto appellant's leased four acres. At that time considerable rubbish had been permitted to ac-

cumulate on the leased ground where said ties were stored, and considerable dry grass was also growing on and east of said leased premises, between said premises and spur-track No. 4. A strong wind was blowing on that day. Within a short time after appellee's engine had backed in on spur-track No. 4 to get two cars of lumber and had pulled them out onto the main track of the Joppa branch the dry grass between spur-tracks Nos. 4 and 3, extending onto said leased ground, ignited, possibly or probably from a spark from said locomotive, and rapidly spread to the tie yard, was communicated to the grass and rubbish thereon and to the ties of appellant, and destroyed about 56,000 of said ties before the fire could be extinguished.

At the time of this fire appellant was occupying and using the premises on which said ties were stored under a written lease providing, among other things, for the leasing of said land on the payment of $20 per annum and certain other considerations, and that in consideration of the privilege given in said lease for the storage of cross-ties, etc., the appellant (lessee) "hereby releases the lessors, their successors and assigns, from all liability, either at law or in equity, for or on account of any cause of action that may arise by reason of any damage by fire to the lessee caused by the operation of the railroad of the lessors on, near or by the premises aforesaid, whether said damage occurs on the premises hereby leased or on premises adjacent thereto." Under this provision of the lease, apparently relying largely on the reasoning of this court under a somewhat similar lease in *Checkley* v. *Illinois Central Railroad Co.* 257 Ill. 491, the Appellate Court held appellee was not liable for the burning and destruction of the ties.

Counsel for appellant argue that the provisions of the lease above quoted were void as against public policy; that appellee's company was a common carrier and could not enter into a contract to evade its responsibilities as such. Common carriers cannot exempt themselves from all respon-

sibility for loss or damage arising from the negligence of themselves or their servants. A contract to that effect "is void as against public policy, as attempting to put off the essential duties resting upon every public carrier by virtue of his employment and as tending to defeat the fundamental principle on which the law of common carriers was established,—the securing of the utmost care and diligence in the performance of their important duties to the public." *Chicago, Milwaukee and St. Paul Railway Co.* v. *Solan,* 169 U. S. 133; 2 Cooley on Torts, (3d ed.) 1478.

It is conceded that appellee's company was a common carrier for the purpose of carrying passengers and freight, but counsel for appellee insist that it was not a common carrier for storage purposes for freight, and that therefore it had a right to limit this liability by the lease here in question. If we understand the argument of counsel for appellant, it is that appellee's company in the use of this so-called "freight yard depot" was engaged in the business of railroad warehouseman, and that in so storing the said ties the railroad company was acting as a public utility, and that as such public utility it was obliged to store for any person who asked for the privilege of storing, and that therefore the leasing of said four acres for the exclusive use of appellant was done without authority of law and said lease was therefore void. We find no evidence in the record that appellee's company undertook to store ties either for hire or otherwise. The evidence shows that appellant took possession of the tract of land in question and under said lease had the right to store its ties and to hinder anyone else from storing ties or any other articles upon the premises leased by it, and that appellee had no right to authorize or permit anyone else to store ties or other articles upon this particular tract of land.

It is insisted, however, by counsel for appellant, that under the reasoning of this court in *State Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528, in the control

of said land used for storage purposes appellee's company was acting as a public utility or public warehouseman; that a property becomes clothed with public interest whenever it is used in such manner as to affect the community at large; that section 10 of the Public Utilities act defines the term "service," when used in said act, as including not only the use or accommodation afforded consumers or patrons, but also any product or commodity furnished by any public utility or in connection with its work. It is contended said section 10 shows that the word "service," as used in said Public Utilities act, is used in its broadest and most comprehensive sense; that under said definition the use of this land for storage purposes must be held as a public utility. While the use of a public utility may be limited to the inhabitants of a small locality, it must be such a use as is common and upon the same terms, however few the number who avail themselves of it. Such use cannot be confined to privileged persons and must be to all men or a class of men and not to the special few. (*People* v. *Ricketts,* 248 Ill. 428.) The use must concern the public as distinguished from an individual or a particular number of individuals. (*State Public Utilities. Com.* v. *Noble Telephone Co.* 268 Ill. 411.) Public use requires that all persons must have an equal right to the use and that it must be in common upon the same terms, however few the number who avail themselves of it; that it shall be open to all people to the extent that its capacity may admit of such use. (*State Public Utilities Com.* v. *Monarch Refrigerating Co. supra;* see, also, *State Public Utilities Com.* v. *Noble,* 275 Ill. 121.) Under these authorities we cannot see how it can reasonably be argued, on the facts in this case, that the land in question, whether 300 or 600 acres, used for leasing in parcels for storage purposes, could be called a depot or a "freight yard depot." It is clear that it was not used by appellee's company for storage purposes for all people who desired to store their property thereon; that it was only used for the

purpose of leasing to people who wanted to store there a definite length of time. We find no basis for holding that it was the duty of appellee's company to allow any of this property to be used by anyone who desired it for storage purposes. In *Checkley* v. *Illinois Central Railroad Co. supra,* the railroad company leased a part of its right of way to Checkley for a warehouse and the warehouse was burned. That lease was somewhat similar in terms, as to the liability from fire, to the lease here in question. The court there said (p. 495) : "But the lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as a common carrier. The public is in no way concerned in this transaction, nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods intrusted to a carrier for transportation. In the latter case the public has an interest which is conserved by holding the carrier to a strict accountability for its negligence or that of its servants, and this for the plain reason that the public is compelled to employ the carrier to transport goods. Any member of the public is liable to require the services of a common carrier, and the carrier is under the legal duty of serving the public indiscriminately. Not so in regard to leasing a part of its right of way for a warehouse or an elevator. While the railroad company has the power to make such lease if it does not interfere with its duties to the public, it is in no sense required to do so. No one could compel a railroad company, by *mandamus,* to lease its right of way for such purposes. It relates to a matter that is entirely within the discretion of the railroad company." (See, also, authorities in note to this case in 31 Ann. Cas. 1206.) We think that reasoning applies with full force to the use and leasing of this land for storage purposes. It seems clear to us, under the law, that appellee's

company was under no obligation to lease this land to appellant. In so doing it was acting for the convenience of both parties. It doubtless had in mind that if the ties were stored there it would eventually obtain the hauling of them to market over its railroad, but there was no public duty resting upon it to store these ties from the time they were first placed upon the leased land until they were destroyed, on April 6, 1915. During all this time they were under the control of appellant, acting under its lease, and while it might be assumed, on the evidence here, that it was impracticable for appellant to remove these ties in any other way than by shipping them over appellee's railroad, there can be no question that under the facts here stated appellant would have the full right and authority to remove the ties from said land in any other way if it saw fit so to do, and we think, on the facts in this case, under the reasoning of the *Checkley case*, the provisions of this lease are valid.

Counsel for appellant do not attempt to argue that the reasoning in *Checkley v. Illinois Central Railroad Co. supra*, is not the law, but insist that that case on nine different points is clearly distinguishable from this case. Perhaps the nine points may be summed up in the statement of counsel that the warehouse in that case was not a public utility and that this so-called "freight yard depot" was a public utility. As we have held that this land was not a freight depot as that phrase is ordinarily understood, nor a public utility, we do not think it is necessary to attempt to argue in detail as to the various points of difference claimed by counsel. We think the reasoning and conclusion in that case apply here and that the provisions of this lease are valid. (See, also, *Hartford Fire Ins. Co. v. Chicago, Milwaukee and St. Paul Railway Co.* 175 U. S. 91; *Chicago, Rock Island and Pacific Railway Co. v. Hamler*, 215 Ill. 525.) This being so, the trial court rightly directed a verdict under said first and third counts.

It is further argued by counsel for appellant that the court erred in sustaining a general demurrer to the second count of appellant's declaration. We think what we have already said as to appellee's company not being a public utility so far as its leasing of this ground is concerned, disposes of the arguments of counsel on this question. Appellant, under the first and third counts, was permitted to offer any evidence that was admissible to show that appellee's company was engaged in the business of a public utility, and the mere fact that it was not permitted to show these things under the second count could not by any possibility have injured appellant. If appellee's company was not acting as a public utility in allowing said ties to be stored on its ground, then the demurrer to the second count was rightly sustained. See *Heckle* v. *Grewe,* 125 Ill. 58; *Bettis* v. *Green,* 171 id. 495.

Counsel for appellant also argue that if this land is not charged with a public use and held to be used as a part of a depot or railroad right of way of appellee's company it cannot be controlled and owned by it; that a railroad company, under the doctrine of *ultra vires,* cannot own this land. That question cannot be raised in this proceeding but must be raised in a direct proceeding on behalf of the people. Where a corporation may for some purposes acquire and hold title to real estate, it cannot be made a question by any party except the State whether the real estate has been acquired for the authorized uses or not. *Hamsher* v. *Hamsher,* 132 Ill. 273; *Hossack* v. *Ottawa Development Ass'n,* 244 id. 274.

We find no reversible error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*