(No. 21426.—

OSCAR WOLFF, Plaintiff in Error, *vs.* ALBERT SCHWILL & Co. Defendant in Error.

*Opinion filed December 23, 1932.*

McKINNEY, LYNDE & GREAR, (HAYES McKINNEY, and HAROLD W. HAWES, of counsel,) for plaintiff in error.

DAVID & FAINMAN, GEORGE GILLETTE, and C. G. KINNEY, (SIGMUND W. DAVID, of counsel,) for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This case is here on writ of error to review a judgment of the circuit court of Cook county in an action of ejectment. The judgment of the court below was for the de-

fendant, and the plaintiff below is the plaintiff in error here. Only questions of law are involved, as there is no dispute between the parties as to the pertinent facts, although sharp differences of opinion are presented in the respective briefs as to the legal consequences arising from the agreed facts and the respective pleadings of the parties.

The declaration. contained two counts. The first count alleged the possession of certain land by the plaintiff and his claim thereto in fee, and that the defendant made an unlawful entry thereon and now unlawfully deprives the plaintiff of possession. The second count alleged the possession of the land, which was vacant and unoccupied, in the plaintiff, he claiming the fee; that the defendant claimed some title or interest therein and now unlawfully withholds from the plaintiff its free use, enjoyment and possession. Two pleas were filed by the defendant—the general issue to both counts—and a plea setting up that the plaintiff, prior to the commencement of the action, had not made any demand on the defendant for the possession of the land. ·

The land involved is in Ironworkers' addition to South Chicago and is in a district devoted to factories, railroads and other commercial uses, and is located near· the boundary line between Illinois and Indiana. The east line of the land in dispute is a part of the shore line of Lake Michigan, while its western boundary is the rights of way of the Lake Shore and Michigan Southern and two other railroads.

The defendant was organized under the general Corporation act of this State in 1901. The object of its incorporation was "to manufacture malt, and in connection therewith to acquire by purchase or otherwise, and to dispose of by sale or otherwise, any and all real and personal property and any and all interests therein, in Illinois and elsewhere, necessary or proper to the conduct of such business." The defendant located its factory on land immediately west of the land in question, being separated from such land only by the railroad rights of way above men-

tioned. · Large quantities of water are required by the defendant in the manufacture of malt. Prior to 1910 it procured its water from Lake Michigan through an intake crib and pipe line of some length. From the shore line of the lake to its factory this pipe line was laid over certain private lands by virtue of an easement. Before the expiration of this easement in 1910 the defendant began to seek other means of bringing the water from the lake to its plant. The land in question between the railroads and the lake was then owned by William G. Edens, with Edward Roby having some interest therein which the record does not disclose. The defendant opened negotiations with parties representing Edens for the purchase from Edens of an amount of land sufficient for the defendant's intake line. The only terms upon which Edens would consent to sell a portion of his lake shore property to the defendant were that Edens would sell sufficient land to entitle the defendant to obtain its water supply, provided the defendant loaned to Edens and Roby the sum·of $10,000 and took a mortgage on that part of the land it did not buy. No other terms could be made, and the defendant, in order to secure the indispensable water in quantities needed to continue its business, accepted the terms imposed. On September 19, 1910, Roby executed his promissory note for $10,000 to the defendant, and on the same day Edens and his wife, together with Roby, executed a trust deed conveying the land in question to the defendant as security for the note. The note was payable two years from date, with interest. On the same day the tract of land required by the defendant was deeded to it by the Edens. Two years passed with nothing paid either on the principal or interest of the debt and the parties to the note and trust deed were in default. The defendant thereupon filed its suit in equity in the circuit court of Cook county to foreclose the trust deed. In this suit personal service of summons was had upon Edens and wife and upon Roby. These defendants answered, de-

nying various allegations of the bill. The cause was referred to a master in chancery, who returned his findings in complete support of the defendant's right to a decree of foreclosure. Among other things the master found that the court had jurisdiction of the subject matter and parties; that the defendant was organized as an Illinois corporation for the purpose of manufacturing malt, "and in connection therewith to acquire by purchase or otherwise and to dispose of by sale or otherwise any and all real and personal property and any and all interests therein, in Illinois and elsewhere, necessary or proper to the conduct of such business." All objections and exceptions to the master's report were overruled, and the court entered a decree on July 17, 1913, which found, among other things, "that on or about the 19th day of September, 1910, the said complainant purchased certain real estate acquired by it in connection with the business which was then being conducted by it under the powers granted to it in its charter, and as part of the consideration for such purchase the said complainant, was required to loan to the said Edward Roby on the said 19th day of September, 1910, the sum of ten thousand ($10,000) dollars." The decree ordered a sale of the land and contained the usual provision directing the master to execute a deed to the holder of the certificate of sale, with the further provision that "the defendants in this cause, and all persons claiming under them or either of them, shall be forever barred and foreclosed from all equity of redemption and claim of, in and to said premises and every part and parcel thereof which shall have been sold as aforesaid and which shall not have been redeemed according to law." In due course the land was offered for sale and bid in by the defendant for an amount equaling the accumulated debt, costs and fees. The period of redemption passed without either of the Edens or Roby making redemption, and the defendant received a deed from the master to the land on May 13, 1915. The defendant has paid all taxes and assess-

ments on the land as they have become due since that time. The land remained an unimproved, unused, sandy expanse on the shore of Lake Michigan, with no question raised as to the defendant's title or possession during the ensuing years. One month before the plaintiff instituted his action of ejectment, in October, 1926, he secured a quit-claim deed for a stated nominal sum from Edens, the owner and mortgagor of the property which had been foreclosed upon and sold in 1913. Judgment was entered in favor of the defendant in the ejectment suit on April 9, 1930.

The plaintiff in error now contends (1) that the loan transaction between the defendant and Edens and Roby was *ultra vires,* as a corporation organized to manufacture malt could not lawfully loan money; (2) that the defendant was without legal power to purchase the land at the master's sale, and consequently no title was acquired by the purchase or by the master's deed; (3) that the decree entered in the foreclosure suit did not constitute a former adjudication and thus bar the present ejectment action; and (4) that the circuit court of Cook county exceeded its power and jurisdiction by entering the decree in the foreclosure suit on the assumption that the loan was a valid one, and consequently the decree of foreclosure, the sale pursuant to such decree and the confirmation of the sale were all null and void.

It will not be necessary for us to consider each of these contentions separately, as only two questions need be decided by this court to effectively and fully dispose of the points raised by the plaintiff in error. These questions are: (1) Did the circuit court in the foreclosure suit judicially determine that the loan made by defendant was not an *ultra vires* act? (2) Is the plaintiff estopped by what occurred in the foreclosure proceeding from asserting in the ejectment suit that the defendant's action in loaning the money was an *ultra vires* act?

It is admitted by plaintiff in error that the circuit court in the foreclosure proceeding had jurisdiction of the parties and of the subject matter. Any judgment or decree of a court having such admitted jurisdiction, no matter how erroneous, is final and conclusive unless reversed upon appeal or writ of error. (*Figge* v. *Rowlen,* 185 Ill. 234; *Finlen* v. *Skelly,* 310 id. 170.) This court said in *Miller* v. *Rowan,* 251 Ill. 344: "Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding on the parties and on every other court unless reversed or annulled in a direct proceeding and is not open to collateral attack." This rule of law has long been adhered to by this court and was only recently reiterated in *Crane* v. *Crane,* 341 Ill. 363.

In the foreclosure proceeding instituted by the defendant in error in 1913 against Edens, his wife and Roby, it became necessary for the court to determine the validity of the instruments upon which the proceedings rested. The record shows that in so acting the court did not act upon any assumptions, as now claimed by the plaintiff in error, but, on the contrary, it proceeded to judicially determine, as one of its duties, whether the loan, note and trust deed were all lawful and of binding force and effect. Evidence was introduced before the master in chancery as to the purpose for which the defendant in error was organized and the powers of the corporation in respect thereto as expressly granted by its corporate charter. There was given

in detail before the master the history back of the loan, evidenced by the execution of the note and trust deed. This evidence as to charter purposes and powers and of the loan transaction was as is given in the statement of facts in the forepart of this opinion. The record further discloses that Edens, his wife and Roby, the defendants in the fore-closure proceeding, denied in their joint and several answers, among other things, that the allegations in the bill as to the existence and power of the then complainant corporation were sufficient upon which to predicate the action. Even though these denials were of the stereotyped, general variety and did not directly allege that the transaction was *ultra vires,* they nevertheless were sufficient to cast upon the complaining corporation the inescapable task of showing in evidence before the master its corporate organization, object and powers. This evidence was produced, and the master found that the making of the loan was a necessary act by the complaining corporation (the defendant in error here) for the purpose of obtaining the water required to carry out its principal corporate object—*i. e.,* the manufacture of malt.

The decree of foreclosure approved the master's report, the court finding that it had jurisdiction of the parties and subject matter and that complainant was a lawfully organized Illinois corporation, and further, that "the said complainant purchased certain real estate acquired by it in connection with the business which was then being conducted by it under the powers granted to it in its charter, and as a part of the consideration for such purchase the said complainant was required to loan to the said Edward Roby on the said 19th day of September, 1910, the sum of ten thousand ($10,000) dollars." This language clearly shows that in the foreclosure proceedings the court was aware of and gave due consideration to the compelling purpose for which the loan was made. The use of the word "required" by the court in the decree significantly reveals

that the chancellor believed that the complainant's recital of the history of the transaction was the truth. It was therefore logically found and decreed that the corporation in making the loan was doing an act authorized by its charter, the performance of which was one of direct necessity, so inseparably and closely linked with its corporate objects as to have been lawfully and properly done under its charter powers. The record and the quoted language from the decree lend no force to the argument of the plaintiff in error that the court only assumed that the defendant had a right to make the loan.

The plaintiff in error cannot well question the right of the defendant in error to hold land for certain purposes in view of its express charter powers in that regard. Whether the defendant is now holding the land in question within the scope of its charter powers or in abuse thereof is a question which the State of Illinois alone can raise. *Bartee Tie Co.* v. *Jackson,* 281 Ill. 452; *Hayden* v. *Hayden,* 241 id. 183; *Springer* v. *Chicago Real Estate Loan Co.* 202 id. 17.

With reference to the question of estoppel, it must be obvious from what is said above that the decree in the foreclosure suit, the sale pursuant thereto and the order confirming the sale finally and conclusively determined all of the remaining questions raised by the plaintiff in error and that those questions cannot be re-litigated in this case. The corporate power of the complaining corporation to make the loan in question was judicially determined by a court having jurisdiction of the parties and subject matter and cannot now be collaterally attacked by the plaintiff in error, who stands in the stead of the Edens and in immediate privity with them. It is not necessary for us to determine if the defendant in making the loan acted within its corporate authority, inasmuch as we have held that in the foreclosure proceedings the circuit court expressly determined that the corporation acted within the scope of its charter.

36

Precisely the same question is involved in the present ejectment suit, and the attempt to void the prior judicial determination of that point constitutes a collateral attack, in contravention of well established principles of law. *Miller* v. *Rowan, supra; Crane* v. *Crane, supra; Little* v. *Blue Goose Motor Coach Co.* 346 Ill. 266; *Winkelman* v. *Winkelman,* 310 id. 568.

For the reasons assigned, the judgment of the circuit court of Cook county entered upon the findings in favor of the defendant corporation, Albert Schwill & Co., and against the plaintiff, Oscar Wolff, is affirmed.

*Judgment affirmed.*