George Steiger et al., Complainants, v. Charles B. Wood et al., Defendants.

Baldwin State Bank of Delavan et al., Appellants, v. Charles B. Wood et al., Appellees.

Charles B. Wood, Cross Complainant, v. George Steiger et al., Cross Defendants.

Gen. No. 9,104.

Opinion filed October 14, 1938. Rehearing denied January 3, 1939.

A. M. FITZGERALD, of Springfield, and C. L. CONDER, of Pekin, for appellants.

ROBERT M. CULBERTSON, of Delavan, and C. R. BIRKETT, of Peoria, for certain appellees.

TODD, MORGAN, PENDARVIS & ARBER, for certain other appellee and cross appellant.

PER CURIAM.

This is an appeal by Charles H. Albers, receiver of the Baldwin State Bank, of Delavan, Illinois, defendant, cross complainant and cross defendant, from a decree entered in the circuit court of Tazewell County, Illinois, on September 13, 1937, in a cause wherein Rudolph L. Steiger, administrator of the estate of George Steiger, deceased, et al., were complainants, and Charles B. Wood et al., were defendants, by the terms of which a deficiency judgment was entered against Charles H. Albers, receiver of the Baldwin State Bank of Delavan, in favor of the defendant and countercomplainant, Charles B. Wood, to be paid in due course of administration as far as the assets of said bank would ratably reach. Charles B. Wood, defendant and countercomplainant, filed notice of a cross appeal from certain of the findings and judgment of the court.

This bill was filed April 22, 1932, by the complainants against Charles B. Wood and Amy M. Wood. The Baldwin State Bank, of Delavan, and John H. Shade, its then receiver, were also made parties defendant, and upon the resignation of John H. Shade as receiver William L. O'Connell was appointed successor receiver; and upon his death, it being suggested to the court, Charles H. Albers was substituted as successor receiver.

The bill alleged that the Baldwin State Bank, of Delavan, claimed an interest in the real estate described in the trust deed by virtue of a deed executed by Charles B. Wood and wife to the bank, as grantee, by which deed the same was conveyed subject to a trust deed securing the payment of notes in the sum of $21,000, and which indebtedness the grantee assumed and agreed to pay. Answers were filed by the defendants. The receiver filed a cross-bill, and Charles B. Wood also filed a cross-bill, in which William R. Baldwin, Frank B. Shelton, F. S. Allen, E. R. Rhoades and

E. R. Rhoades, trustee, the Baldwin State Bank and John H. Shade, receiver, were made parties defendant. C. V. Frings was appointed special master to take the proofs, examine questions of law and fact and report the same with his conclusions.

Upon a hearing on the report of the master the same was approved and a decree for foreclosure and sale entered. The decree finds the complainants are the holders of the notes set forth in the complaint; that the premises were conveyed to Wood March 28, 1927, by Garretson and were subject to a mortgage of $21,000, and that William L. Garretson was indebted to the bank upon his personal notes in the sum of $2,000; that Wood held title for the benefit of the bank, as its agent or trustee, for the purpose of enabling the bank to sell the same without foreclosure proceedings and, from the proceeds, to pay the mortgage notes and the personal notes of Garretson due the bank.

That Wood executed the notes at the request of the officers of the bank without consideration, and delivered them to the bank upon the agreement that the bank would pay the same on or before maturity and that he should not become liable for the payment of any sum on account of the execution of the notes. That Wood deeded the premises to the bank, the deed containing an express provision that the grantee assumes and agrees to pay the notes secured by the trust deed, and that the bank accepted the deed and assumed full control and operation of the farm, collected the rents and paid the expenses. That Wood is personally liable on the notes, but, as between him and the bank and its receiver, the bank was the principal debtor and Wood was surety; that the receiver should exonerate Wood by paying any deficiency arising after a sale of the premises in so far as the assets of the bank would reach.

The decree approving the master's report of sale found that Charles B. Wood was indebted to the com-

plainants in the amount of the notes and interest and also found a deficiency of $19,402.16, and that Wood was personally liable to pay complainants such deficiency. Judgment was entered in favor of the various complainants for the amount due each against Charles B. Wood. It was also decreed that Charles H. Albers, receiver of the Baldwin State Bank, exonerate the defendant Wood by paying to him the amount of the deficiency decreed to be paid by him in as far as the assets of the bank would ratably reach in due course of liquidation.

It appears from the record that on March 1, 1920, William R. Baldwin and Frank B. Shelton were co-partners, doing business as the Baldwin Bank, in Delavan, Illinois, and on that day made a loan to William L. Garretson in the sum of $21,000, secured by a trust deed to Frank B. Shelton, trustee, upon ninety-nine acres of land in Delavan township, Tazewell county, Illinois. The notes evidencing the money loaned were sold to customers of the bank.

December 1, 1920, the Baldwin State Bank of Delavan was incorporated, and at a meeting of the directors, held on December 4, 1920, a resolution was adopted buying all the interests of the Baldwin Bank theretofore owned by Baldwin and Shelton, and assuming control from December 1, 1920, of all profits, assets and responsibilities of said bank, Baldwin and Shelton guaranteeing all notes and assets.

Garretson, being unable to pay his indebtedness upon maturity of the notes on March 1, 1925, the trustee, Shelton, who was also cashier of the bank, extended the loan one year and again, on March 1, 1926, it was extended another year. Garretson was also indebted to the bank at that time in the sum of $2,000. He agreed to deed the farm to the bank, so that it might be sold and the noteholders and bank paid and the surplus turned over to him. Mr. Shelton told Wood, who was one of the directors of the bank, that

Garretson was unable to pay the loan and asked him to take title to the farm and carry it for the noteholders and the bank until a solution could be arrived at. The land was conveyed by Garretson to Wood, and he was given a lease of the farm for a year, which was renewed for another year, and at the expiration of which time he offered to waive all interest in the farm or the proceeds derived from the sale, providing the obligations he owed would be surrendered to him.

In order to carry out this proposition of Garretson's, Wood and his wife conveyed the land to E. R. Rhoades, trustee, to secure the payment of sixteen notes executed by Wood, due in five years after date, and aggregating the sum of $21,000 with 5 per cent interest, and also gave the bank his personal note for $2,000 representing the personal debt due the bank from Garretson. Prior to the execution of the trust deed and notes Wood had a conversation with Frank B. Shelton at the bank, in which Garretson's loan was discussed, wherein Shelton asked Wood to execute the notes and trust deed, at the same time assuring Wood that the bank would hold him harmless in the matter and that the bank did not expect him to pay the notes and he would never lose a cent. When the notes and trust deed were turned over to Shelton at the bank, he assured Wood that it was not his obligation at all, and it was so understood. Subsequently Wood had a conversation with various officers of the bank concerning the Garretson farm, and received a written instrument signed by all of the officers and directors of the bank except Price, a director, which was substantially as follows:

Whereas Charles B. Wood did, at the request of the directors of the Baldwin State Bank, of Delavan, Illinois, take title to one hundred acres of land deeded to him by W. L. Garretson (describing the same). The land was deeded to Wood, a director of the bank, rather than to have the bank take title, said Wood did on tak-

ing title give to the bank a trust deed and notes for $21,000, with interest, and a personal note for $2,000 and interest. It is the wish of the bank that Wood sell said land as soon as the directors of the bank shall state, and deliver to the purchaser a warranty deed, the purchase money or security to be paid to said bank, and that being done the bank shall cancel and deliver to Wood all of the notes, amounting to $23,000, and all interest due, and release Wood from any further obligations to the bank resulting from the above transaction; Wood to be under no obligation to pay any money for repairs, taxes, or any other purpose, but the bank shall pay all such expenses.

At the time Wood executed the trust deed and notes, he and his wife executed a warranty deed conveying the premises to the Baldwin State Bank of Delavan, the deed containing a provision that it was made subject to the trust deed securing the sum of $21,000, which the grantee assumed and agreed to pay, thereby releasing the grantors of all liability on the $21,000 and interest thereon. This deed was given to Frank B. Shelton at the bank, and retained by it. In December, 1931, Wood had a conversation with Mr. Rhoades, then cashier of the bank, and Mr. Nicholson, chief bank examiner. Mr. Rhoades mentioned to Nicholson the circumstances of the Garretson farm, and informed him the farm was considered as the bank's farm and carried in the name of Mr. Wood.

When the farm was deeded to Wood the bank took over the management and control of the same. As the rents fell due, in 1927, they were placed in the bank and credited to the Garretson Farm Account, and this account was carried until the bank closed. From this account all taxes, insurance, and other expenses of every kind in connection with the farm, were paid. The payments included the interest on the $21,000 notes that Wood signed. The rents were not always sufficient to pay the interest and taxes and other ex-

penses. When there was a shortage they loaned the money on a note to Mr. Wood. These notes were signed, more or less, for the purpose of bookkeeping, and were given to keep the account from being overdrawn.

Mr. Wood never paid the notes, they were ultimately charged off by the bank, and charged to ''Expense'' or ''Profit and Loss,'' at the end of an interest period. This account was kept along with the other accounts in the bank.

John H. Shade was appointed receiver of the bank on January 25, 1932, but he resigned as such receiver and William L. O'Connell was duly appointed as successor; and on the death of William L. O'Connell in October, 1936, Charles H. Albers, receiver, was substituted as a party.

On behalf of appellant it is contended that the transaction, entered into between the bank and Garretson, and taking the title to the premises by Wood and his subsequent making of the trust deed and the notes secured by the same, and the deeding of the same by Mr. Wood to the bank, subject to the trust deed securing $21,000 in notes, and the provision in the deed by which the bank assumed and agreed to pay the indebtedness secured by the trust deed and relieving Wood of all liability on account thereof, is not binding upon the bank to the detriment of its depositors and creditors, and that he, as receiver, has authority to disclaim any liability on account thereof, advancing several reasons for so contending, one of which is the transaction, was not entered into by the proper corporate action.

It is insisted that it was the duty of the bank under the law to keep a minute record of the proceedings of its board of directors, and that the records of the bank are not only the best but the only evidence admissible to prove or disprove any of the issues made in the case. It is further insisted that there is no competent evidence in the record showing that the board of direc-

tors of the bank passed the resolution, signed by them, in which was stated the purpose and terms upon which Mr. Wood took title to the land in question, and subsequently issued the notes and trust deed securing the same; that the report of the officers to the auditor of public accounts does not show the bank to have owned any real estate except the bank building, nor do they show that the Garretson or Wood notes were owned as an asset or liability of the bank. It is contended that the evidence shows conclusively that if there was any agreement had with Wood it was secret and undisclosed, and that the officers of the bank did conceal the true state of the bank from the auditor and the depositors; that the reports show that this account was designated on the books of the bank as the Garretson Farm Account with C. B. Wood as manager.

It is not the law that a bank can be held liable for only those contracts that are made by the board of directors acting in a meeting and of which a record is kept. In the case of *Nelson v. Colegrove,* 265 Ill. App. 488, a case cited by appellant as sustaining his contention, it is said: ''The bank can only be held liable upon contracts for action taken by its board of directors, of which record must be kept, or by the action of its officers acting within their authority.'' A bank will be bound by the acts of its president, cashier, or any other officer who has authority to act for it, as well as by the formal resolutions of its board of directors. *Libby v. Union Nat. Bank,* 99 Ill. 622.

Frank B. Shelton was cashier of the bank and had complete control of the farm loan business, and when Garretson could not pay his mortgage indebtedness when it became due in 1925 he consulted Shelton, trustee in the deed of trust, and cashier of the bank, to whom he always went in connection with the business of his loan, and he extended the loan for one year. When Garretson could not meet his indebtedness he agreed to deed the farm to the bank so that it might

be sold and the mortgage indebtedness and the $2,000, that Garretson owed to the bank on his personal notes, be paid and any surplus paid over to him. Mr. Shelton informed Mr. Wood, who was one of the directors of the bank, that Garretson was unable to pay his loan and asked him to take title and carry it for the benefit of the noteholders and the bank until a solution could be arrived at. After acquiring title Wood leased the farm to Garretson for one year. The farm was then offered for sale at public auction by Garretson, and a bona fide bid of $239 per acre was received. Garretson, however refused to permit the bid to be accepted as he believed the farm was worth $250 per acre. A sale at the price offered would have realized enough money to have paid the noteholders, the personal indebtedness of Garretson to the bank and a surplus to Garretson. After this Garretson offered to give up possession of the farm and waive all interest he had in the same, or in the proceeds derived from its sale, upon condition that his mortgage notes and trust deed and his personal notes due to the bank be surrendered to him.

It was at this time that Wood executed the new mortgage notes and trust deed and his personal note for $2,000, representing the personal liability of Garretson on his notes to the bank, and delivered the same to the bank in order that it might obtain full control over the farm by exchanging the notes, executed by Wood, for the Garretson notes and in this way be in a position to effect a sale of the farm without the consent of Garretson, and without foreclosure proceedings.

Wood executed the notes and trust deed involved in this proceeding without any consideration, and had no personal interest in the matter and did not benefit in any way by the transaction, and simply acted as trustee for the bank and entirely in its interest upon the written contract of the officers of the bank, that the debt would be paid by the bank, and upon the verbal

assurance of Frank B. Shelton, cashier of the bank at the time he requested Wood to execute the trust deed and notes, that the bank would hold him harmless in the matter and that he would never lose a cent. In addition to the assurance received by Wood he deeded the premises to the bank subject to the trust deed indebtedness, which the bank assumed and agreed to pay.

The contract signed by the officers of the bank and the verbal assurance given Wood by Frank B. Shelton, cashier, is the contract and assurance of the bank and shows plainly why Wood executed the notes and trust deed. He was merely acting for the bank, and would not have signed the notes and trust deed if the assurance of the cashier and the contract of the officers of the bank, holding him free from loss, had not been given him. Under the laws of Illinois a bank can purchase real estate to secure the satisfaction of a debt due it, even though it be incumbered and costs a considerable sum over and above the debt, and the title to the land is acquired from another than the debtor. *Libby v. Union Nat. Bank, supra; Mapes v. Scott,* 88 Ill. 352. Property which a bank is not ordinarily authorized to purchase may be acquired as security for a loan or in payment of a past due debt. In obtaining additional security to perfect its loan, it may assume payment of liens existing against the security obtained. 9 C. J. S., Banks & Banking, Sec. 168; 7 Am. Jur., Banks, Sec. 163. And when it is within the powers of the bank to acquire certain real estate, it may, as a part of the transaction, assume and agree to pay the mortgage thereon. 7 Am. Jur., Banks, Sec. 168.

Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument, for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or

indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for special purpose only, and not for the purpose of transferring the property in the instrument. Ch. 98, sec. 36, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 89.036].

The court did not err in permitting Wood to show the purpose of his taking title to the land and the purpose for which the notes and trust deed were executed and delivered to the bank, showing that the same was without any consideration for so doing, so far as he was 'concerned. The evidence admitted was all part of the one transaction, and therefore admissible.

We are of the opinion that the bank was bound by the contract of its officers, and by its acceptance of the deed to the premises, and that the court was not in error when, by the decree, it ordered the receiver to exonerate Wood by paying him the amount of the deficiency to be paid by him.

The contention of appellant that the bank had Wood take title to the farm secretly and with the intent to deceive the auditor and depositors of the bank is without foundation. There is nothing in the record that would show that there was any fraudulent intent on the part of the officers of the bank or Mr. Wood in placing the title in his name. In the first place Garretson consented to deed the farm to Mr. Wood to hold the title in trust for the bank, the same to be sold and the money used to pay the mortgage indebtedness and money due the bank, the surplus to be turned over to him. When the farm was put up for sale at public auction by Garretson and a bid sufficient to pay the indebtedness and leave a surplus was obtained, he refused to let the farm be sold.

It was after this that Mr. Shelton, on behalf of the bank, induced Mr. Wood, by agreeing to hold him free from loss, to execute and deliver to the bank the mortgage notes to take the place of the Garretson notes. This was done on the express condition that Garretson

would deliver up possession of the farm and waive all interest therein and from the proceeds thereof so that the farm could be sold and the money due the bank from Garretson together with the mortgage indebtedness paid. It had just been demonstrated that the premises would sell for enough to pay all of the indebtedness. The record shows that the bank examiner for the auditor of public accounts knew about the transaction and informed the officers of the bank that, in carrying the account as the Garretson Farm account, they met with the approval of the auditor. The bank fulfilled its obligation entered into with Mr. Wood during the time it was doing business, and objection to the transaction was made by the receiver in January, 1932.

Appellant further insists that the purpose of Mr. Wood, in taking title to the land, was to protect the noteholders or customers rather than to collect an indebtedness due the bank, and that the action of the officers in their attempt to render the bank liable in the transaction was ultra vires and void, and not binding on the receiver. That the powers of a bank are only such as may be granted by the statute; that the bank had no interest in the Garretson farm. That it has always been against the policy of the State to permit corporations to own real estate beyond that which is necessary for their corporate business. Had Wood only taken title to secure the bank the payment of the $1,986.21, owing to it by Garretson, yet to take title and then assume the payment of the $21,000, was certainly beyond its power as a bank, and, particularly so, since Garretson's paper was amply secured. Garretson's note was signed by a brother of his, who was the owner of real estate, but the record fails to show him financially responsible.

Under the provisions of ch. 16½, sec. 9, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 10.09], a bank may carry as an asset real estate necessary to do its business and such other real estate to which it may obtain

title in the collection of its debts. In the case of *Wolff v. Schwill & Co.*, 351 Ill. 28, 183 N. E. 567, it is held that when the charter of a corporation expressly authorizes it to hold land for certain purposes, whether it is holding the land within the scope of its chartered power or in abuse thereof, is a question which the State alone can raise. Citing *Bartee Tie Co. v. Jackson,* 281 Ill. 452, 117 N. E. 1007; *Hayden v. Hayden,* 241 Ill. 183, 89 N. E. 347; *Springer v. Chicago Real Estate Loan & Trust Co.,* 202 Ill. 17, 66 N. E. 850.

The Baldwin State Bank having authority under the provisions of the statute above cited to carry as assets real estate necessary to do its business and such other real estate to which it might obtain title in the collection of its debts, appellant cannot question the right of the bank to take title to the real estate in question. As to whether in so doing it abused its authority can only be inquired of by the State.

Appellant asserts that there appears to have been no agreement on the part of the bank whereby it was to answer or become liable for the debt or undertaking made by Mr. Wood; that the statute of frauds and perjuries provides that no action shall be brought whereby it will charge a defendant with any special promise to answer for the debt or default of other persons unless the promise is in writing. This in effect is the contention, that the bank was not authorized to take title to the real estate and assume and agree to pay the mortgage incumbrance in order to collect the money due it from Garretson on his personal notes.

The bank did not undertake to answer for the debt of another, as we have heretofore shown. Wood was trustee for the bank in the transaction and acted for it and at its request in the execution of the notes and trust deed and the debt was in reality that of the bank.

Cross appellant Wood insists that the court was in error when it found that the bank negotiated the notes to the several plaintiffs for a good and valuable consideration and that the plaintiffs are the holders there-

of in due course and Wood became liable upon said notes upon their execution and made default in the payment thereof.

It is also claimed that Wood could not become personally liable immediately upon the execution and delivery of the notes to the bank as his want of consideration would be a defense in the hands of any one not a holder in due course. That Wood's notes were exchanged for Garretson's notes which were worthless as personal obligations, and the persons who acquired Wood's notes could not have become purchasers for value. That regardless of how a mortgage noteholder acquired title thereto, his note is subject to the same defenses in a foreclosure proceeding as it was in the hands of the original holder or payee. The Wood notes are therefore subject to his defense of want of consideration. It was manifestly erroneous for the trial court to allow deficiency judgments in favor of plaintiffs against Wood.

It is claimed that the trial court should have allowed direct claims in favor of the noteholders against the receiver of the bank; that the decree of the trial court should be reversed insofar only as it found that the bank negotiated the notes for a good and valuable consideration in due course, and that Wood became and is personally liable thereon and has made default in payment.

The record is quite voluminous, and while many questions are raised and argued they all center around the contention that the bank was not bound by the action of its officers and directors.

We have given due consideration to the questions raised and argued on behalf of appellant and cross appellant and are of opinion that the decree of the circuit court of Tazewell county should be affirmed and the same is accordingly affirmed.

*Decree affirmed.*